IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:16cr17 |
| | ) | |
| OMER GUR, | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF UNITED STATES
WITH RESPECT TO SENTENCING FACTORS

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, the United States of America, through its attorneys, Dana J. Boente, United States Attorney for the Eastern District of Virginia, and Brian J. Samuels, Lisa R. McKeel and Kevin Hudson, Assistant United States Attorneys, hereby represents that it has reviewed the Probation Office's pre-sentence report (hereinafter "PSR") and that it does not dispute any of the facts set forth therein.  For the reasons to follow, as well as those to be offered during the sentencing hearing on October 27, 2016, the United States respectfully requests that the Court impose a sentence within the advisory guideline range on Counts One and Thirty-Four.  Such a sentence properly reflects the factors referenced in 18 U.S.C. § 3553(a).

## BACKGROUND

On February 10, 2016, the defendant was charged in a thirty-four count indictment returned by a grand jury in the Eastern District of Virginia, Newport News Division, along with nine other individuals.  The defendant was charged in all thirty-four counts of the indictment, including: Conspiracy to Defraud and to Commit Offenses Against the United States, in violation of 18 U.S.C. § 371 (Count 1); Visa Fraud, in violation of 18 U.S.C. §§ 1546 and 2 (Counts 2-8); Encouraging and Inducing Illegal Entry, in violation of in violation of 8 U.S.C. §§

1324(a)(1)(A)(iv) and 2 (Counts 9-14);  Harboring Illegal Aliens, in violation of in violation of 8 U.S.C. §§ 1324(a)(1)(A)(iii) and 2 (Counts 15-21); Transporting Illegal Aliens, in violation of in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and 2 (Counts 22-33); and Conspiracy to Launder Money; in violation of 18 U.S.C. § 1956(h) (Count 34).

On July 6 2016, the defendant pled guilty to Counts One and Thirty-Four of the indictment. As the detailed PSR and the Statement of Facts reveal, the defendant's convictions stemmed from an extensive scheme, in which the defendant played an overall leadership role, to recruit, transport and harbor an illegal work force consisting of over 140 citizens from Israel, who then worked at various mall kiosks in multiple states marketing products from Israel. *See generally* PSR at ¶¶ 13 –15.  Every one of these over 140 workers violated their B-2 visitor visa status in traveling to the United States to work. The workers earned income, yet the defendant and others paid no employment or income taxes for them.  The housing, travel and payment of the workers were supervised by the defendant and other regional managers, who also engaged in acts to fraudulently extend the visas of the workers through various false statements as to their residence and employment.

The proceeds from the scheme paid for its continuation and/or were concealed and/or transferred to the defendants and to accounts in Israel.  As such, the fraudulent visas facilitated the commission of tax crimes as well as the very money laundering offense to which the defendant pled guilty.  This is a separate and distinct financial crime that was facilitated and made possible through the revenue stream generated by the illegal B-2 workers.

The defendant had been among those who entered the United States on a B-2 visa.  From 2004–2016, he served as the head of the various related companies that formed the RASKO umbrella, through which the scheme operated.  Although each region had its own corresponding

entity, the defendant was an authorized user on each regional entity's bank account, along with the respective regional manager.  The defendant, along with each regional manager, served as the contact and/or signed leases for apartments and malls through which the scheme operated, and through which proceeds of the scheme were disbursed.    RASKO brought together its United States workforce at least once a year at meetings in Las Vegas.  The defendant purchased travel tickets and reserved rooms for the employees.  The defendant also authorized checks (sometimes in the amounts of thousands of dollars) to various employees and managers.

The defendant is attributed with laundering over $7,000,000 in criminal proceeds (far above that of the other co-defendants in the money laundering conspiracy).  Such amounts include over $2,000,000 to known workers, $688,0000 in foreign transfers, $254,000 to the defendant and co-defendant Eyal Katz (the Israeli head of the scheme) and $840,000 to unindicted co-conspirators.  From a review of the financial section of the PSR for the defendant, it is clear that the defendant also moved proceeds into various businesses and properties.

On February 29, 2016, the defendant learned that RASKO's various Bank of America accounts had been restrained.  Thereafter, as was revealed at the detention review hearing in this case, the defendant researched various flights to leave the United States, spoke with co-defendants (including the regional managers) and then attempted to flee the United States on a one-way flight to Canada.

**DISCUSSION**

### A.  GUIDELINE OBJECTIONS

The United States has reviewed the PSR and has no objections to its content.  The defendant has raised certain objections to various guideline enhancements.  It does not appear that the defendant takes issue with any of the factual content of the PSR, but to the extent his objections

are viewed as such, as a threshold matter, the defendant must do more than merely contest the information in the PSR.  "The defendant has an affirmative duty to make a showing that the information in the presentence report is unreliable, and articulate the reasons why the facts contained therein are untrue or inaccurate."  *See United States v. Terry*, 916 F.2d 157, 162 (4th Cir. 1990) (citing *United States v. Mueller*, 902 F.2d 336, 346 (5th Cir. 1990) (finding that defendant presented no evidence in rebuttal to PSR)); *see also United States v. Randall*, 171 F.3d 195, 211 (4th Cir. 1990).  Without an affirmative showing that the PSR is inaccurate, the Court is "free to adopt the findings of the [presentence report] without more specific inquiry or explanation."  *Terry*, 916 F.2d 162 (quoting *Mueller*, 902 F.2d at 346).  The burden is on the defendant to establish inaccuracy or unreliability.  *Id.*

### 1.  Paragraph 13 – Legality of Workforce

The defendant first contends that 35-40% of the United States based workforce was legal. Although this information does not impact the advisory guideline range, the United States does not believe it to be accurate.  To the knowledge of the United States, there were approximately 340 known workers identified in the investigation.  Over 250 were B-2s or some other form of illegal worker, 52 were unknown and only 33 were United States citizens or had some other legal status.  This was a scheme that operated primarily through the use of illegal labor.

### 2.  Enhancement for Over 100 Documents

The defendant further contends that the offense at issue did not involve over 100 documents, such that a nine level enhancement under U.S.S.G. § 2L2.1(b)(2)(C) is warranted. Notwithstanding the fact that this same enhancement was applied in the case of co-defendant Shlomo Genish, the defendant claims that there were not over 100 separate visa extensions involved in the case.

The United States submits that this enhancement was correctly applied.  Over 140 B-2 workers entered the United States illegally, on B-2 tourist visas.  Over 60 obtained illegal extensions of their visas.  There is no requirement for this enhancement that each "document" involved must form the basis of a separate offense.  Without the B-2 visa, the workers would not have been able to enter the United States at all.  In doing so with the intent to work, they violated their visas from the moment of entry into the country.  As the defendant agreed that over 140 workers were recruited and brought to the United States, the government submits that this enhancement is amply supported by the information in the Statement of Facts alone.

### 3.   Visa used to Facilitate Commission of a Felony Offense

The defendant further contends that he should not receive the same enhancement Shlomo Genish received for the use of a visa facilitating the commission of a felony offense, pursuant to U.S.S.G. § 2L2.1(b)(3).  The United States submits that this enhancement was correctly applied. The visa fraud at issue enabled the conspirators to generate fraudulent proceeds (on which no taxes were paid) that were then used in various financial transactions to promote the underlying scheme, or conceal the ownership or origin of the funds.  These separate and distinct crimes were facilitated through the underlying visa fraud – thus, an enhancement is appropriate.

### 4.   Leadership Enhancement

The defendant further contends that he should not receive a four-level leadership enhancement related to the money laundering offense.  The defendant does not appear to contest this enhancement with respect to the conspiracy to defraud offense in Count One.  Pursuant to U.S.S.G. § 3B1.1, a four-level enhancement is appropriate if the defendant was an organizer or leader in extensive criminal activity (usually involving five or more individuals).  Before assessing such an enhancement, two separate factual inquiries must be made.  "First the district court must

determine the size or scope of the criminal organization... [and] [s]econd the district court must evaluate the defendant's role in the offense." *United States v. Chambers*, 985 F.2d 1263, 1266 (4th Cir. 1993).  A defendant need not be in charge of a minimum number of participants for a role in the offense enhancement to apply.  *United States v. Harriott*, 976 F.2d 198, 200 (4th Cir. 1992). To merit an enhancement, however, "the defendant must have been the . . .  manager, or supervisor of one or more other participants."  U.S.S.G. § 3B1.1, Application Note 2; *see United States v. Capers*, 61 F.3d 1100, 1110 (4th Cir. 1995) (noting that defendant must exercise control over persons to warrant enhancement).

A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted.  U.S.S.G. § 3B1.1, App. Note 1.  A role in the offense enhancement must be based on an individualized determination of the defendant's culpability, without regard to the actions of others.  *United States v. Moore*, 29 F.3d 175, 176 (4th Cir. 1994); *see also United States v. Thorson*, 633 F.3d 312, 318-19 (4th Cir. 2011) (reviewing criteria for leadership enhancement).

The United States asserts that the information in the PSR and Statement of Facts supports this enhancement without any additional evidence.  The defendant was the overall head of the scheme in the United States.  This leadership involved the financial transactions, across the regions and company-wide, that formed the basis for the money laundering conspiracy.  The defendant was an authorized user of each bank account in every region (along with that region's manager), engaged in financial transactions involving international transfers and was a beneficiary of a larger portion of the scheme's proceeds.  The defendant is also attributed with far more in laundered funds than any other regional manager.  In addition to engaging in transactions that promoted the scheme, the defendant transferred funds to Israeli based accounts and set up various businesses in

the United States through which he could disburse the fraud's proceeds.  It is no answer to say that certain financial transactions may overlap with the evidence of the scheme that generated the proceeds.  The defendant performed a leadership role in both conspiracies and is properly enhanced for this role.

Although the information in the PSR and Statement of Facts is sufficient, the United States has debriefed various conspirators, who have indicated that the defendant directed and was in charge of the various financial transactions – to include payments, transfers and purchases of assets.  The United States reserves the right to present this information at the sentencing hearing if necessary for the resolution of this objection.

## B.  SECTION 3553(A) FACTORS

The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the guidelines remain a significant and pivotal component of the sentencing process.  The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter."  *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009).  Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant.

The United States submits that a consideration of the Section 3553(a) factors warrants a guideline sentence as the guidelines substantially do reflect the nature and circumstances of the offense and the defendant's background.  These nature and circumstances weigh heavily against this defendant.  This case involved a long-running and extensive scheme, spread across multiple

states and nations, to defraud four government agencies – the Departments of Labor, State, Homeland Security as well as the Internal Revenue Service.  The profits from the scheme were vast, well into the millions of dollars and these funds were used domestically and sent to Israel to further the scheme.

The defendant played the lead role in the scheme, as the head of various businesses under the RASKO company umbrella.  The defendant facilitated and led every aspect of the fraudulent scheme, from receiving, harboring, employing and transporting the illegal workers, to arranging for false extensions of the B-2 visas, of payment to the illegal workers and further distribution of the profits of the scheme abroad.

The defendant is attributed with laundering over $7,000,000.  Because his underlying offense was an immigration-based offense, however, none of these criminal proceeds that the defendant is directly attributed with have an impact on his advisory guideline range.  In this way, the government submits that the guidelines fail to capture the full extent and impact of the defendant's crimes.  For this reason, as well as the defendant's long tenure in the scheme, a sentence within the guidelines is very reasonable.

When the accounts of the business were seized, rather than address the situation, the defendant attempted to flee the United States.  This would have resulted in managers and workers bearing the brunt of the collapsing of the scheme.

Once he obtained his current counsel, the defendant did work to resolve the case and entered a timely plea.  Should the defendant qualify for acceptance of responsibility, he is certainly entitled to the third level reduction for sparing the government and the Court the need to prepare for trial.

The defendant's background provides for little mitigation.  He had a supportive family and his three siblings are all successful in Israel.  The defendant served in the Israeli military for several years.  The defendant came to the United States in 2003 and then engaged in a fraudulent marriage in 2005 in order to get his lawful permanent resident card.

The defendant has been involved in the business that served as the vehicle for this fraud since 2004.  Although the defendant claims the various other businesses he owned engaged in no fraud, this has not been investigated and it is clear that at least some of the fraudulent proceeds from RASKO went into the defendant's other businesses and properties.  The defendant's tax returns for 2012-2014 certainly underreport the fraudulent earnings he made through the scheme.  The defendant's various properties, assets and businesses reveal the extent of how he benefitted from the fraud, with a current net worth of over $500,000.

The defendant has no criminal history and the guidelines certainly credit this.  But this factor cuts both ways, as the defendant committed this deliberate crime as a mature, educated adult.  The business that the defendant rose to lead was built on the backs of illegal labor which defrauded the United States and served his own financial ends.  These crime was not a rash or foolhardy act of someone that could not appreciate the consequences of his actions.

In a case involving nine convicted defendants, the Court should also concern itself with disparities among co-defendants.  Shlomo Genish, the manager of one region, received a sentence of 60 months based on his participation.  The government submits that this defendant, as the overall head of the scheme in the United States, should certainly receive a greater sentence than Genish and that the advisory range of 70-87 months provides an appropriate measure of the defendant's culpability with respect to those of his co-defendants.

Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2)(A)-(C).  A consideration of each of these factors warrants a sentence of incarceration.

As a matter of general deterrence, it is particularly important to send the message throughout the country that this sort of illegal scheme, that was so widespread and involved well over 150 individuals, will not be tolerated or excused and will result in a prison sentence. Individuals cannot come to the United States under false pretenses, engage in life and work under the protection of our laws and not be expected to abide by those laws.  The defendant and his conspirators evinced a contempt for the laws of the United States in the course of their long running fraud.

Deterrence under Section 3553(a) is not limited to the necessary sentence to deter the defendant from engaging in further criminal conduct (specific deterrence), but also includes consideration of deterring other potential criminals from engaging in similar conduct (general deterrence).  *United States v. Phinazee*, 515 F.3d 511, 515-16 (6th Cir. 2008) ("The plain language of the statute . . . also militates against limiting the authority of the court to specific deterrence . . . . We note that this conclusion comports with the longstanding and uncontroversial practice of considering general deterrence in sentencing.") "Because economic and fraud-based crime are 'more rational, cool and calculated than sudden crimes of passion or opportunity' these crimes are 'prime candidates for general deterrence.'" *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006).

<u>CONCLUSION</u>

The defendant engaged in a fraudulent scheme to deceive and defraud agencies of the United States, where he has lived and worked illegally for years.  He was the overall leader in an unlawful enterprise that defrauded the United States to the benefit of the defendant and his conspirators.   He requires just punishment.  For the foregoing reasons and others to be provided during the sentencing hearing on October 27, 2016, the United States respectfully requests that the Court impose a sentence within the the advisory range on Counts One and Thirty-Four

Respectfully submitted,

Dana J. Boente
United States Attorney

By:      _____/s/_____
Brian J. Samuels
Virginia State Bar No. 65898
Assistant United States Attorneys
Attorneys for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport, VA  23606
Phone: 757-591-4032
Email:  brian.samuels@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th day of October 2016, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic

notification of such filing to the following:

L. Barrett Boss, Esq.
Sadie Rebecca Brodey, Esq.
1200 19th Street, NW, Ste. 300
Washington, DC 20036
(202) 912-4800

James Orlando Broccoletti, Esq.
6663 Stoney Point South
Norfolk, Virginia 23502
(757) 466-0750

I HEREBY CERTIFY that on this 20th day of October 2016, I sent a true and correct

copy of the foregoing to the following by electronic mail:

Cathleen C. Yetzer
U.S. Probation Officer
600 Granby Street, Suite 200
Norfolk, Virginia 23510

_____/s/_____
Brian J. Samuels
Virginia State Bar No. 65898
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport, VA  23606
Phone: 757-591-4032
Email:  brian.samuels@usdoj.gov